## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### CASE NO.:

TIMOTHY LARSON, individually and
on behalf of all others similarly situated

                 Plaintiff,                      **CLASS REPRESENTATION**

vs.                                            **JURY TRIAL DEMANDED**

GROVES CAPITAL, INC.

                 Defendant.
_____/

### CLASS ACTION COMPLAINT

Plaintiff, TIMOTHY LARSON (hereinafter "Plaintiff"), brings this class action under Rule 23 of the Federal Rules of Civil Procedure against GROVES CAPITAL, INC. (hereinafter "Defendant") for its violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, (hereinafter the "TCPA") and the Florida Telephone Solicitation Act, § 501.059 (hereinafter "the FTSA"). In support, Plaintiff alleges as follows:

### INTRODUCTION

1.     Plaintiff brings this Class Action Complaint for damages, injunctive relief, and all other available legal or equitable remedies, resulting from Defendant's unlawful actions in negligently and/or willfully contacting Plaintiff on Plaintiff's personal cellular telephone, thereby invading Plaintiff's privacy.

2.    To promote and market its services, Defendant, directly or through persons on its behalf, routinely and systematically violates Fla. Stat. § 501.059 and 47 C.F.R. 64.1200(c) and (d) by failing to honor opt-out requests and clear revocations of any conceivable consent, and delivering telemarketing solicitations, advertisements and marketing messages to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC").

3.    Plaintiff and Class Members received unwanted telemarketing calls and text messages from Defendant without regard to the FTSA, the TCPA, the Do-Not-Call Rules, and for individual privacy. This lawsuit challenges all calls and text messages that were sent by Defendant, or on Defendant's behalf, to Plaintiff and Class Members from approximately July 2019, through the date of preliminary approval of class certification.

4.    The FTSA and TCPA were designed to prevent telemarketing calls and text messages like the ones described within this Complaint, and to protect the privacy of citizens like Plaintiff and the Class. The Federal Communications Commission (FCC) reports that unwanted calls and texts constitute its top consumer complaint. *See* Federal Communications Commission, *Stop Unwanted Calls and Texts* (Mar. 2, 2021), https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Apr. 16, 2021).

5.    "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [FCC]."[1] Unwanted calls are the number one consumer complaint to the Commission.[2]

6.    As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335, 2343 (2020).

## JURISDICTION AND VENUE

7.    This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227. Jurisdiction is also proper pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

8.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this district, including Defendant's transmission of the unlawful telemarketing calls and texts to Plaintiff and putative class members in this district on

---

[1].    *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, ¶ 1 (2015).
[2].    *Rep. to Cong. on Caller Id Authentication Implementation Progress*, 2020 WL 7863050, at *1 (OHMSV Dec. 29, 2020)

their residential telephone numbers – consumers with Florida area codes, including those who were registered with the National DNC Registry.

9.    The Court has personal jurisdiction over Defendant because Defendant directs, markets, and provides its business activities to this district, and has availed itself to the jurisdiction of this district by transmitting the subject telemarketing calls and text messages to Plaintiff and putative class members who reside in this state.

## PARTIES

10.    Plaintiff's domicile is in Clay County, Florida. Plaintiff is a citizen of the State of Florida, where the subject robocalls to him and Class Members in Florida were received, within the jurisdiction of this Court.

11.    Defendant is a California company with its principal address located at 4025 Stonebridge Ln, Rancho Sante Fe, CA 92021, and at all times mentioned herein, a corporation and "persons," as defined by 47 U.S.C. § 153 (39).

12.    Defendant is a mortgage company primarily in the business of securing and obtaining loans and extension of credit for homeowners.

13.    Defendant was and is at all times relevant hereto a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).

14.    Defendant directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, assisted with, ratified, turned a blind eye to, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited text messages that are the subject matter of this Complaint.

15.     Defendants either directly or through authorized lead generators, sales agents, vendors, marketers, and/or contractors promotes its products and services through the use of unlawful telemarketing campaigns.

## FACTUAL ALLEGATIONS

16.     Plaintiff has been on the National Do-Not-Call Registry since approximately July 25, 2015, and at all times relevant to this action.

17.     The TCPA provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c).

18.     Defendant utilizes mass spam telemarketing calls text messaging to send unsolicited calls and text messages, marketing and advertising Defendant's services, including at least fifteen (15) unsolicited calls and two (2) text messages to Plaintiff's telephone number ending in 0312 since October 2020.

19.     Plaintiff's full telephone number is not being provided in this Complaint, a public document, to prevent further unwanted and unauthorized calls to Plaintiff. Plaintiff's full telephone number will be provided to counsel for Defendant in discovery.

20.     This number is used by Plaintiff for residential purposes and is considered by him to be a residential number.

21.     A chart of the calls and text messages received by Plaintiff is below:

| Call #: | Spoofed Number That Contacted Plaintiff: | Date: | Time: | Type: |
|---|---|---|---|---|
| 1. | (407) 258-4261 | 10/8/2020 | 3:13 PM | Call |
| 2. | (321) 248-3765 | 5/17/21 | 2:37 PM | Call |
| 3. | (321) 248-3765 | 5/17/21 | 2:45 PM | Call |
| 4. | (321) 248-3765 | 5/20/21 | 8:51 PM | Call |
| 5. | (818) 414-6870 | 5/25/21 | 4:41 PM | Call |
| 6. | (818) 414-6870 | 6/8/21 | 3:58 PM | Call |
| 7. | (904) 590-9201 | 11/26/21 | 11:17 AM | Call |
| 8. | (310) 200-0912 | 11/27/21 | 11:39 AM | Call |
| 9. | (310) 200-0912 | 11/30/21 | 10:54 AM | Call |
| 10. | (310) 200-0912 | 11/30/21 | 10:54 AM | Text |
| 11. | (310) 200-0912 | 12/1/21 | 12:59 PM | Call |
| 12. | (310) 200-0912 | 12/2/21 | 11:50 AM | Call |
| 13. | (310) 200-0912 | 12/14/21 | 10:45 AM | Text |
| 14. | (310) 200-0912 | 12/15/21 | 10:44 AM | Call |
| 15. | (310) 200-0912 | 12/18/21 | 10:25 AM | Call |
| 16. | (310) 200-0912 | 12/28/21 | 10:48 AM | Call |
| 17. | (239) 327-6006 | 3/4/22 | 6:22 PM | Call |

22.    Screen shots of the text messages are provided below for demonstrative purposes:



Tuesday, November 30, 2021



Tuesday, December 14, 2021

23.    The calls and text messages that Defendant made or allowed a third party to make on its behalf constitute "telephonic sales calls" because they were for the purpose of advertising and promoting for Defendant's services and are sent for the purpose of "soliciting a sale of [] consumer goods or services . . ." within the meaning of Fla. Stat. § § 501.059(1)(j).

24.    On calls number 1, 7, and 17, each of them started with a distinctive "beep" commonly associated with and indicative of an autodialer. When each of these

calls were answered, after first speaking to a live representative, the calls were then transferred to a salesperson or agent who identified themselves as working for Groves Capital. Each of these calls also displayed "spoofed" numbers with local area codes to entice Plaintiff to answer them.

25.    On each of the other calls and texts, the caller identified itself as calling directly from Groves Capital.

26.    Plaintiff sent written letters to Defendant on numerous occasions, including on October 8, 2020; May 17, 2021; May 20, 2021; May 21, 2021; May 26, 2021; June 8, 2021; November 26, 2021; and December 28, 2021. In each of these letters, Plaintiff expressly told Defendant that he was on the DNC registry, that he did not consent to any calls, and requested that he stopped being called.

27.    Despite Plaintiff's numerous and clear revocation of any conceivable consent, Defendant ignored Plaintiff's requests and continued to bombard him with unsolicited and unwanted telemarketing calls and texts.

28.    Plaintiff did not provide Defendant with prior express written consent or any other party acting on Defendant's behalf to authorize the subject telemarketing calls and text messages. Indeed, prior to making (or knowingly allowing a third party to make on its behalf) the subject telemarketing text messages Defendant lacked a signed written agreement with Plaintiff that complies with the requirements of the TCPA and Fla. Stat. § 501.059(1)(g).

29.    Defendant was or should have been aware that it was unlawfully transmitting telemarketing text messages to Plaintiff and other consumers without

prior express consent or prior express written consent to telephone numbers on the DNC Registry.

30.    Because Defendant continued to send telemarketing calls and text messages to Plaintiff after his clear revocation of any alleged consent, it demonstrates that the messages continued to be sent with an automated system or messaging platform, Defendant's failure to ensure that adequate procedures and safeguards were in place to honor opt-out requests, and Defendant's willfulness.

31.    Nevertheless, Defendant did not have express written consent to send the telemarketing messages to Plaintiff and Class Members in the first place, particularly because their numbers were registered on the DNC.

32.    Defendant's failure to honor opt-out instructions by Plaintiff and the Class members is indicative of Defendant's failure to 1) maintain written policies and procedures regarding its call and text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

33.    To the extent Defendant outsourced its telemarketing spam call and text messaging campaigns, it is nonetheless liable for texts that violate the TCPA and/or FTSA.

34.    Defendant is liable for third-party actions because it took steps to cause the telemarketing calls and texts to be made, and/or because the telemarketing calls and texts were made pursuant to Defendant's actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

35.    Defendant had the ability and/or right to control the method and scope of the telemarketing calls and text message campaigns sent to Plaintiff and the Class members.

36.    Defendant had the ability and/or right to control the timing and approve, write, and review the content of the telemarketing calls and text message campaigns sent to Plaintiff and the Class members.

37.    Defendant authorized the use of its trade name in the telemarketing calls and text messages sent to Plaintiff and the Class members.

38.    Defendant knowingly accepted the marketing benefits of the telemarketing calls and text messages sent to Plaintiff and the Class members, including the consumer leads generated through transmissions of the messages.

39.    Given Defendant's right to control over the telemarketing calls and text messaging campaigns at issue and/or its ratification of the campaigns, Defendant is vicariously liable for the violations alleged herein.

40.    Moreover, many of the calls and texts were transmitted directly and personally by Defendant's employees and actual agents.

41.    Defendant failed to keep, maintain, implement, and/or enforce policies and procedures to ensure compliance with the FTSA and TCPA, and/or provide adequate oversight to ensure compliance with any policies it maintained.

42.    Compliance with the FTSA will not result in Defendant having to cease its business operations.

43.    Compliance with the FTSA will not result in Defendant having to alter the prices of goods or services it provides in the marketplace.

44.    Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

45.    Because Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

46.    The telemarketing calls and text messages at issue caused Plaintiff and putative Class Members harm. In addition to using their cellular data, storage, and battery life, they suffered invasion of privacy, aggravation, annoyance, frustration, distraction, and their seclusion was intruded upon, forcing them to divert attention away from their work, home life and other activities, inconvenience, wasted time, risk of future harm, causing disruption to their work, sleep, and other activities, and violations of their substantive statutory rights under the TCPA and FTSA to remain free of unsolicited calls. *See Muransky v. Godiva Chocolatier, Inc.,* 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact"…. "[A] small injury… is enough for standing purposes");*See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

47.     Plaintiff and Class Members had to spend wasted time away from work, family, and personal activities, and suffered aggravation, because of Defendant's unsolicited telemarketing text messages.

48.     For example, apart from forcing Plaintiff to spend time investigating the source of the calls and text messages and invest time researching and hiring counsel, Plaintiff received some of the unsolicited calls while he was sharing personal and intimate time with his spouse, and while he was working. This caused Plaintiff on multiple occasions to stop to check his phone, answer the phone and speak with Defendant's agents and representatives, and waste time speaking with Defendant and reviewing the messages to confirm they were not for an emergency purpose, causing specific injury, trespass, intrusion and disruption onto Plaintiff's personal, work, and daily life.

49.     Because Plaintiff and Class Members continued to received telemarketing calls and texts from Defendant on their DNC registered numbers, and after they expressly revoked any conceivable consent, it demonstrates the need for judicial intervention and injunctive relief to enjoin any continued and future harm.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this class action under Fed. R. Civ. P. 23, on behalf of himself and of a similarly situated "Class" or "Class Members" defined as:

> **DNC Class: All persons within the United States who (1) were sent at least two calls or text message by or on behalf of Defendant (2) within a 12-month period from or on behalf of**

Defendant within the four years prior to the filing of this Complaint; (3) and such person had previously included their number on the National Do Not Call Registry at least 31 days prior to receiving the first call or text message from Defendant; (4) for the purpose of selling or promoting Defendant's products and services; and (5) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.

Internal DNC Class: All persons within the United States who, within the four years prior to the filing of this Complaint, received any telemarketing call or text message from or on behalf of Defendant, to said person's cellular telephone number *after* making a request to Defendant to not receive future telemarketing calls or text messages.

FTSA CLASS: All persons within the State of Florida who, (1) were sent a telephonic sales call regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff, (3) since July 1, 2021 through the date of class certification.

FTSA Revocation Call Class: All persons within the State of Florida who, prior to the filing of this Complaint, received any telemarketing call from or on behalf of Defendant, to said person's cellular telephone number *after* making a request to Defendant to not receive future telemarketing calls messages.

FTSA Revocation Text Class: All persons within the State of Florida who received any text message from or on behalf of Defendant at least 15 days *after* communicating to Defendant that they did not wish to receive telemarking messages by replying to the messages with "stop" or by otherwise sending any written opt-out request between July 1, 2021, to the date of Class Notice.

Florida Telemarketing Act After Hours Class: All persons within the four years prior to the filing of this Complaint, within the State of Florida who, (1) were sent a telephonic

sales call regarding Defendant's goods and/or services, (2) before 8 a.m. or after 8:00 p.m.

51.     Excluded from the Class are: any Defendant, and any subsidiary or affiliate of that Defendant, and the directors, officers and employees of that Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

52.     This action has been brought and may properly be maintained as a class action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

53.     **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of a standardized spam text messaging campaign electronically sent to particular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

54.    Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's call and text logs, and marketing records.

55.    Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

56.    **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

a.    Whether Defendant initiated telemarketing calls or text messages sent to Plaintiff and Class members;

b.    Whether Defendant can meet its burden of showing that it had prior express written consent to send such call and texts;

c.    How Defendant obtained the numbers of Plaintiff and Class members;

d.    Whether Defendant violated 47 C.F.R § 64.1200(c) and (d) and its regulations;

e.  Whether Defendant violated Florida Statute § 501.059 and its regulations;

f.  Whether Defendant maintains an internal do-not-call list;

g.  Whether Defendant violated the privacy rights of Plaintiff and members of the class;

h.  Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney's fees and costs for Defendant's acts and conduct;

i.  Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

j.  Whether Plaintiff and the Class are entitled to any other relief.

57.    One or more questions or issues of law and/or fact regarding Defendant's liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

58.    **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the FTSA and TCPA.

59.    Plaintiff and members of the Class each received at least one telephonic sales call, advertising Defendant's services without prior express written consent, which Defendant sent or caused to be sent to Plaintiff and the members of the Class.

60.    **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel, who are competent and experienced in TCPA litigation and class action litigation.

61.    **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendant by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be

encountered in the management of this action that would preclude its maintenance as a class action.

62.     **Class-Wide Injunctive Relief:** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the TCPA and FTSA, and to order Defendant to provide notice to them of their rights under the TCPA and FTSA to statutory damages and to be free from unwanted calls.

**CAUSES OF ACTION**
**COUNT I**
**VIOLATIONS OF 47 U.S.C. § 227(c) AND C.F.R. § 64.1200(c)**
**(On behalf of Plaintiff and the DNC Class)**

63.     Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 62 of this Complaint as if set forth verbatim herein.

64.     The TCPA provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c).

65.    47 C.F.R. § 64.1200(e), further provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

66.    Both calls and texts to numbers on the DNC registry violate the TCPA. *See* 47 C.F.R. § 1200(c)(2).

67.    Wireless phone subscribers have always been able to add their personal wireless phone numbers to the national Do-Not-Call list.[3]

68.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

69.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the Do-Not-Call Registry Class members who registered their respective telephone numbers on the National Do-Not-Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

---

[3].    *See* Federal Communications Commission, Wireless Phones and the National Do-Not-Call List, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list#:~:text=Placing%20telemarketing%20calls%20to%20wireless,been%20%2D%20illegal%20in%20most%20cases. (Last visited June 18, 2023).

70.    As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount in statutory damages for each willful violation recoverable by members of the Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

**COUNT II**
**VIOLATIONS OF 47 U.S.C. § 227(c) AND C.F.R. § 64.1200(d)**
**(On behalf of Plaintiff and the Internal DNC Class)**

71.    Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 62 of this Complaint as if set forth verbatim herein.

72.    47 C.F.R. § 64.1200(d), in relevant part, provides: "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards including:

*(1) Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity. . .

(6) *Maintenance of do-not-call lists*. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

73.     Pursuant to 47 C.F.R § 64.1200, the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

74.     Plaintiff and others Internal DNC Class members made requests to Defendant not to receive telemarketing text messages from Defendant.

75.    Defendant failed to honor Plaintiff's and the Internal DNC Class members opt-out requests.

76.    Defendant violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

77.    Pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the Internal DNC Class members are entitled to an award of $500.00 in statutory damages, for each text message sent by Defendant. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Internal DNC Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

## COUNT III
## VIOLATION OF FLA. STAT. § 501.059
### (On Behalf of Plaintiff and the FTSA Class)

78.    Plaintiff re-allege and incorporate paragraphs 1-62 as if fully set forth herein.

79.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection

is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

80.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

81.    "Prior express written consent" means an agreement in writing that:

1.  Bears the signature of the called party;

2.  Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3.  Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4.  Includes a clear and conspicuous disclosure informing the called party that:

    a.  By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

    b.  He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement

23

as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

82.    Defendant failed to secure prior express written consent from Plaintiff and the FTSA Class members.

83.    In violation of the FTSA, Defendant or someone acting on its behalf, made telephonic sales calls to Plaintiff and the FTSA Class members without Plaintiff's and the FTSA Class members' prior express written consent.

84.    Defendant or someone acting on its behalf made the telephonic sales calls to Plaintiff and the FTSA Class members utilizing an automated system for the selection or dialing of telephone numbers.

85.    As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Mudhir and the FTSA Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

86.    To the extent Defendant's conduct is found to be knowing and/or willful violations of the FTSA, Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to §501.059(10)(a)(b).

87.    Pursuant to section 501.059(10)(a), Plaintiff seeks injunctive relief prohibiting Defendant's unlawful conduct in the future to protect Plaintiff and the FTSA Class members from Defendant's unsolicited calls and practices.

88.    Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the FTSA Class members.

89.    Plaintiff and the FTSA Class members will suffer irreparable harm if Defendant is permitted to continue its practice of violating the FTSA.

90.    The injuries that the Plaintiff and the FTSA Class members will suffer if Defendant is not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Defendant will suffer if it is enjoined from continuing this conduct.

91.    The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the unlawful practices described herein.

92.    Accordingly, Plaintiff and the FTSA Class members seek an injunction requiring Defendant to implement policies and procedures to secure express written consent before engaging in any text message solicitations, and to follow such consent requirements.

93.    Plaintiff is also entitled to reasonable attorney fees and costs incurred in prosecuting this action.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Miramar Apartments, as set forth in the Prayer for Relief below

## COUNT IV
## VIOLATIONS OF FLORIDA STATUTE § 501.059
## (On behalf of Plaintiff and the FTSA Revocation Call Class)

94.    Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 62 of this Complaint as if set forth verbatim herein.

95.    It is a violation of the FTSA to initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the person that he or she does not wish to receive an outbound call, text message, or voicemail transmission. Fla. Stat. § 501.059(5)(a), (b).

96.    Plaintiff and the FTSA Revocation Call Class Members made requests to Defendant not to receive telemarketing calls from Defendant.

97.    Defendant failed to honor Plaintiff's and the FTSA Revocation Call Class Members opt-out requests.

98.    In violation of the FTSA, Defendant made and/or knowingly allowed outbound telemarketing calls to Plaintiff and the FTSA Revocation Call Class members after they had previously communicated to Defendant that they did not wish to receive any telemarketing messages from Defendant.

99.    Plaintiff received at least 13 telemarketing calls from Defendant after he communicated to Defendant that he did not wish to receive any telemarketing messages from Defendant, revoking any conceivable consent.

100.    As a result of Defendant's conduct, and pursuant to Florida Statute § 501.059 (10)(a), Plaintiff and the FTSA Call Revocation Class are entitled to an award of $500.00 in statutory damages, for each violation. To the extent Defendant's misconduct is determined to be knowing and/or willful violations of the FTSA, the Court should, pursuant to Fla. Stat. § 501.059(10)(a)(b), treble the amount of statutory damages recoverable by the members of the FTSA Class.

101.   Pursuant to section 501.059(10)(a), Plaintiff seeks injunctive relief prohibiting Defendant's unlawful conduct in the future to protect Plaintiff and the FTSA Revocation Call Class members from Defendant's unsolicited calls and practices.

102.   Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the FTSA Revocation Call Class members.

103.   Plaintiff and the FTSA Revocation Call Class members will suffer irreparable harm if Defendant is permitted to continue its practice of violating the FTSA.

104.   The injuries that the Plaintiff and the FTSA Revocation Call Class members will suffer if Defendant is not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Defendant will suffer if it is enjoined from continuing this conduct.

105.   The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the unlawful practices described herein.

106.   Accordingly, Plaintiff and the FTSA Revocation Call Class members seek an injunction requiring Defendant to implement policies and procedures to secure express written consent before engaging in any text message solicitations, and to follow such consent requirements.

107.   Plaintiff is also entitled to reasonable attorney fees and costs incurred in prosecuting this action.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

**COUNT V**
**VIOLATIONS OF FLORIDA STATUTE § 501.059**
**(On behalf of Plaintiff and the FTSA Revocation Text Class)**

108.    Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 62 of this Complaint as if set forth verbatim herein.

109.    It is a violation of the FTSA to initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the person that he or she does not wish to receive an outbound call, text message, or voicemail transmission. Fla. Stat. § 501.059(5)(a), (b).

110.    Plaintiff and the FTSA Revocation Text Class Members made requests to Defendant not to receive spam telemarketing text messages from Defendant.

111.    Defendant failed to honor Plaintiff's and the FTSA Revocation Text Class Members opt-out requests.

112.    In violation of the FTSA, Defendant made and/or knowingly allowed outbound telemarketing text messages to Plaintiff and the FTSA Revocation Text Class members, at least 15 days after they had previously communicated to Defendant that they did not wish to receive any telemarketing messages from Defendant.

113.    Plaintiff received at least 2 telemarketing text messages from Defendant more than 15 days after he provided written communication to Defendant revoking any conceivable consent.

114.  As a result of Defendant's conduct, and pursuant to Florida Statute § 501.059 (10)(a), Plaintiff and the FTSA Revocation Text Class are entitled to an award of $500.00 in statutory damages, for each violation. To the extent Defendant's misconduct is determined to be knowing and/or willful violations of the FTSA, the Court should, pursuant to Fla. Stat. § 501.059(10)(a)(b), treble the amount of statutory damages recoverable by the members of the FTSA Class.

115.  Pursuant to section 501.059(10)(a), Plaintiff seeks injunctive relief prohibiting Defendant's unlawful conduct in the future to protect Plaintiff and the FTSA Revocation Text Class members from Defendant's unsolicited calls and practices.

116.  Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the FTSA Revocation Text Class members.

117.  Plaintiff and the FTSA Revocation Text Class members will suffer irreparable harm if Defendant is permitted to continue its practice of violating the FTSA.

118.  The injuries that the Plaintiff and the FTSA Revocation Text Class members will suffer if Defendant is not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Defendant will suffer if it is enjoined from continuing this conduct.

119.  The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the unlawful practices described herein.

120.    Accordingly, Plaintiff and the FTSA Revocation Text Class members seek an injunction requiring Defendant to implement policies and procedures to secure express written consent before engaging in any text message solicitations, and to follow such consent requirements.

121.    Plaintiff is also entitled to reasonable attorney fees and costs incurred in prosecuting this action.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

## COUNT VI
## VIOLATIONS OF FLORIDA STATUTE § 501.616(6)(a)
## (On behalf of Plaintiff and the Florida Telemarketing Act After Hours Class)

122.    Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 62 of this Complaint as if set forth verbatim herein Plaintiff is also entitled to reasonable attorney fees and costs incurred in prosecuting this action.

123.    Pursuant to the Florida Telemarketing Act, Florida Statute 501.616(6)(a):

> *A commercial telephone seller or salesperson may not make any of the following types of phone calls*, including calls made through automated dialing or recorded messages:
>
> (a)    *A commercial telephone solicitation phone call before 8 a.m. or after 8 p.m. local time in the called person's time zone.*
>
> ****

124.    Defendant broke this law when it called Plaintiff on May 20, 2021 at 8:51 p.m.

125.    The calls to Plaintiff were unsolicited telephone calls for commercial persons, and for the purpose of selling consumer goods or services related to residential homes.

126.    Defendant is a commercial telephone seller because it engaged in commercial telephone solicitation on its own behalf or through salespersons.

127.    As a result of Defendant's conduct, and pursuant to Florida Statute § 501.625 Plaintiff and the Florida Telemarketing Act After Hours Class are entitled to actual and/or punitive damages in an appropriate amount to be determined by the Court for each violation.

128.    Plaintiff seeks injunctive relief prohibiting Defendant's unlawful conduct in the future to protect Plaintiff and the Class members from Defendant's unsolicited calls and practices.

129.    Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the Class members.

130.    Plaintiff and the Class members will suffer irreparable harm if Defendant is permitted to continue its practice.

131.    The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the unlawful practices described herein.

132.    Plaintiff is also entitled to reasonable attorney fees and costs incurred in prosecuting this action.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually and on behalf of the Class(es), prays for the following relief:

a.  An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

b.  An order declaring that Defendant's actions, as set out above, violate the FTSA, and TCPA and its implementing regulations;

c.  Statutory damages of $500 per text message, for each FTSA and TCPA violation;

d.  Willful damages at $1,500 per text message, for each FTSA and TCPA violation;

e.  An injunction prohibiting Defendant from texting numbers assigned to the DNC Registry without the prior express written consent of the called party;

f.  Reasonable attorney's fees and costs; and

g.  Such further and other relief as this Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury.

Dated: July 27, 2023                Respectfully submitted,

                                    /s/ Joshua H. Eggnatz
                                    Joshua H. Eggnatz, Esq.
                                    Fla. Bar No.: 0067926
                                    Michael J. Pascucci, Esq.
                                    Fla. Bar No.: 83397
                                    EGGNATZ | PASCUCCI
                                    7450 Griffin Road, Suite 230
                                    Davie, Florida 33314
                                    Tel: (954) 889-3359
                                    jeggnatz@justiceearned.com

                                    *Counsel for Plaintiff and the Class*